RAYMOND FRANZ vs. HOLYOKE STREET RAILWAY COMPANY.

Hampden.    September 22, 1921. — October 11, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Negligence*, Street railway. *Way*, Public.

At the trial of an action against a street railway company for personal injuries received by reason of the conduct of a crowd when the plaintiff at three o'clock in the afternoon was attempting to board a car of the defendant at a regular stopping place on a public way near a factory where he was employed, there was evidence tending to show that the car would seat forty-five persons; that for three or four months previous to the accident a crowd of from two hundred to two hundred and fifty men gathered at the same time of day at the same place to board the car; that sometimes the defendant would send one and sometimes two cars; that twenty or thirty times during that period only one car was sent; that upon the arrival of the car all the crowd would run for it "in a bunch;" that there then was pushing and men were knocked down; that on the occasion of the plaintiff's injury the defendant sent only one car; that all ran for it, some boarding it ahead of the plaintiff; that the plaintiff took hold of a bar and stepped with one foot on the step, when he was so pushed that his wrist gave way and he fell and was injured. *Held*, that

(1) A finding was warranted that the plaintiff was injured by reason of boisterous, violent and disorderly conduct of a crowd that the defendant might have foreseen;

(2) The question, whether the plaintiff was in the exercise of due care, was for the jury;

(3) The circumstance, that it was on a public way that the plaintiff was boarding the car when he was injured, was not decisive of his rights;

(4) A finding was warranted that, when injured, the plaintiff was a passenger;

(5) It was a question for the jury, whether the defendant did what was reasonably required to protect the plaintiff as a passenger from harm or to restrain the crowd.

TORT for personal injuries alleged to have been received when the plaintiff was attempting to board an electric street railway car of the defendant in that part of Chicopee known as Chicopee Falls on February 17, 1917.  Writ dated April 12, 1917.

In the Superior Court the action was tried before *King*, J. Besides testifying as described in the opinion, the plaintiff testified that on the day of the accident and for some time previously he had been employed by the Fisk Rubber Company at Chicopee Falls; that he worked from seven o'clock in the morning to three

o'clock in the afternoon on a regular shift; that he left the plant at three o'clock in the afternoon of the day of the accident and walked up the road to a bridge in Chicopee Falls where the Holyoke cars stopped; that some days the defendant would send one car and some days they would send two; that there were about two hundred men and sometimes about two hundred and fifty waiting for the cars; that this happened every day while he was working at the plant; that he worked at the plant about three or four months before the accident; that on the day of the accident one car came down to the bridge; that he was waiting there for it with the rest of the men; that the car came to the bridge and stopped, and that then "they all started for the car in a bunch, all started to go for the car."

Other material evidence is described in the opinion. At the close of the evidence, the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was submitted on briefs.

*H. W. Ely, J. B. Ely & W. C. Giles,* for the plaintiff.

*W. H. Brooks,* for the defendant.

CROSBY, J. This is an action to recover compensation for personal injuries received by the plaintiff while boarding a car of the defendant on Bridge Street, in that part of the city of Chicopee known as Chicopee Falls. The car had come from Holyoke and stopped at a regular stopping place, for the purpose of receiving passengers on its return trip. The plaintiff who lived in Holyoke testified that he, with a large number of other men, waited for the car and when it stopped they all ran for it; that there were some men who boarded the car ahead of him; that "When he was to get on the car he held on to one of those bars and stepped one foot on the step and the other men behind him pushed him in the car. There were a half a dozen or more who pushed against him. When he was to get on the car they were all right on to him. . . . He held on to the bar on the car, which was a closed car, and the crowd pushed in. His wrist gave way and he fell right down. He struck two steps, the bottom step and the top step right on his left side. When he fell down the men were still crowding on the car. . . . During the four months that he worked at the plant the defendant sometimes sent one car and sometimes two. On twenty or thirty times during that period

they sent one car.  On those occasions there were about two hundred or two hundred and fifty men waited for it.  They would stand until the car came and then all ran for it.  The crowd stood by the car trying to jump on; he was in the crowd too.  During all these times the men were pushing.  They did the same thing on the day that he was hurt.  He had seen men knocked down sometimes in those previous rushes on the car."  Other evidence tended to show that at the time the plaintiff was injured there was only the ordinary pushing and crowding which usually exists when a large number of persons are hurrying to board an electric car.  *MacGilvray* v. *Boston Elevated Railway,* 229 Mass. 65.

The conductor testified that his car would seat forty-five persons.  It is plain that, if the plaintiff's testimony were believed, the jury could have found that at the time he was injured there was more than the customary crowding on the part of those present; that their conduct was boisterous, violent and disorderly; and that in view of the testimony as to what had occurred at other times at the same place, the defendant should have foreseen what happened on the day in question and taken some steps to guard its passengers.  *Kuhlen* v. *Boston & Northern Street Railway,* 193 Mass. 341.  *Morse* v. *Newton Street Railway,* 213 Mass. 595.  *Bryant* v. *Boston Elevated Railway,* 232 Mass. 549.  The evidence showed that neither the conductor nor motorman, or any other person in the employ of the defendant, did anything to protect the plaintiff or other persons who were attempting to board the car.

The question whether the plaintiff was in the exercise of due care plainly was for the jury, and upon the evidence disclosed by the record it could not have been ruled, as matter of law, that he assumed the risk of the injury.

It is the contention of the defendant that as the incidents described happened upon a public highway and were due to the conduct of persons thereon, the defendant is not liable.  It is undoubtedly true that it is neither the right nor the duty of a street railway company to control or regulate the action of persons in the streets over which it operates its cars; unruly or disorderly conduct in such places ordinarily is to be prevented or suppressed by police or other officers employed by municipalities for that purpose.

The circumstances, however, that the plaintiff was injured while boarding a car on the highway is not decisive of his rights or the obligations of the defendant in the case at bar. The undisputed facts show that the defendant's car was at a regular stopping place for the purpose of receiving passengers, and persons were invited to enter and become passengers. Any one in proper condition taking hold of the handle bar and placing his foot upon the step and beginning to enter was a passenger. *Gordon* v. *West End Street Railway,* 175 Mass. 181, 183. *Davey* v. *Greenfield & Turner's Falls Street Railway,* 177 Mass. 106. *Duchemin* v. *Boston Elevated Railway,* 186 Mass. 353, 357. *Payne* v. *Springfield Street Railway,* 203 Mass. 425. If, as the jury could have found, the plaintiff had hold of the rail or grab iron, and had one foot on the step in the act of boarding the car, the relation of carrier and passenger was established, and the defendant owed to him the duty of exercising reasonable precautions necessary for his safe transportation.

While the defendant had no authority to control the acts of persons guilty of misconduct committed in the highway, it was bound to protect its passengers from wrongful acts of others, so far as such acts on their part could have been foreseen and guarded against. As the evidence warranted a finding that the injury was received while the plaintiff was a passenger, it was a question for the jury whether the defendant did what was reasonably required to protect him from harm or to restrain the crowd. The case at bar cannot be distinguished in principle from *Morse* v. *Newton Street Railway, supra,* and *Glennen* v. *Boston Elevated Railway,* 207 Mass. 497.

The evidence of the facts above recited, and which the jury could have found to be true, distinguishes the present case from that of *Savickas* v. *Boston Elevated Railway, ante,* 226.

*Exceptions sustained.*